**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **SOVEREIGN PEAK VENTURES, LLC,** § | |
| § | |
| **Plaintiff,** § | |
| § | **JURY TRIAL DEMANDED** |
| **v.** § | |
| § | |
| **HISENSE CO., LTD.,** § | **C.A. NO. _____** |
| **QINGDAO HUATONG STATE-OWNED CAPITAL** § | |
| **OPERATION (GROUP) CO. LTD.,** § | |
| **HISENSE VISUAL TECHNOLOGY CO., LTD.,** § | |
| **QINGDAO HISENSE ELECTRONICS INDUSTRY** § | |
| **HOLDINGS CO., LTD.,** § | |
| **HISENSE IMPORT & EXPORT CO. LTD.,** § | |
| **HISENSE INTERNATIONAL CO. LTD.,** § | |
| **HISENSE INTERNATIONAL (HK) CO., LTD.,** § | |
| **HISENSE INTERNATIONAL (HONG KONG)** § | |
| **AMERICA INVESTMENT CO., LTD.,** § | |
| **HISENSE INTERNATIONAL AMERICA** § | |
| **HOLDINGS CO., LTD.,** § | |
| **GUIYANG HISENSE ELECTRONICS CO., LTD.,** § | |
| **GUIYANG INDUSTRIAL AND COMMERCIAL** § | |
| **ASSETS MANAGEMENT CO., LTD., and** § | |
| **HISENSE ELECTRONICA MEXICO S.A. DE C.V.** § | |
| § | |
| **Defendants.** § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sovereign Peak Ventures, LLC ("SPV") files this Complaint against Defendants

Hisense Co., Ltd. ("Hisense Co."), Qingdao Huatong State-owned Capital Operation (Group) Co.

Ltd. ("Huatong Group"), Hisense Visual Technology Co., Ltd. ("Hisense Visual"), Qingdao

Hisense Electronics Industry Holdings Co., Ltd. ("Hisense Electronics Holdings"), Hisense Import

& Export Co. Ltd. ("Hisense Import"), Hisense International Co., Ltd. ("Hisense Int'l"), Hisense

International (HK) Co., Ltd. ("Hisense Int'l (HK)"), Hisense International (Hong Kong) America

Investment Co., Ltd. ("Hisense Int'l (HK) America"), Hisense International America Holdings Co.,

Ltd. ("Hisense Int'l America"), Guiyang Hisense Electronics Co., Ltd. ("Guiyang Hisense"), Guiyang Industrial and Commercial Assets Management Co., Ltd. ("Guiyang Industrial"), and Hisense Electronica Mexico S.A. de C.V. ("Hisense Mexico") (collectively Hisense Co., Huatong Group, Hisense Visual, Hisense Electronics Holdings, Hisense Import, Hisense Int'l, Hisense Int'l (HK), Hisense Int'l (HK) America, Hisense Int'l America, Guiyang Hisense, Guiyang Industrial, and Hisense Mexico are referred to as "Defendants," "Hisense Group," or "Hisense") for infringement of U.S. Patent No. 6,877,038 (the "'038 patent"), U.S. Patent No. 8,902,871 (the "'871 patent"), U.S. Patent No. 9,357,441 (the "'441 patent"), and U.S. Patent No. 10,039,144 (the "'144 patent") (collectively, the "Asserted Patents").

## THE PARTIES

1.      Sovereign Peak Ventures, LLC is a Texas limited liability company, with a principal place of business in Plano, TX. SPV resides in this District.

2.      On information and belief, Hisense Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Hisense Tower No. 17, Donghaixi Road, Qingdao, Shandong Province, 266071, P.R. China. Hisense Co. holds at least a 10% interest in and, on information and belief, a controlling interest in Hisense Visual and Hisense Import. Hisense Co., individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Co. operates in agency as part of the Hisense Group. Hisense Co. in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

3.     On information and belief, Qingdao Huatong State-owned Capital Operation (Group) Co. Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business located at No. 66, Haikou Road, Qingdao, Shandong Province, 266000, P.R. China. Huatong Group holds at least a 10% interest in and, on information and belief, a controlling interest in Hisense Co. Huatong Group, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Huatong Group operates in agency as part of the Hisense Group. Huatong Group in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

4.     On information and belief, Hisense Visual Technology Co., Ltd., formerly known as Qingdao Hisense Electronics Co., Ltd. and Hisense Electric Co., Ltd., is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business located at 218 Qianwangang Road, Qingdao Economic and Technological Development Zone, Qingdao, Shandong Province, 266555, P.R. China. Hisense Visual has at least a 10% interest in and, on information and belief, a controlling interest in Hisense Int'l, Hisense Int'l (HK), Hisense Int'l (HK) America, Guiyang Hisense, and Hisense Mexico. Hisense Visual, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Visual operates in agency as part of the Hisense Group. Hisense Visual in agency with the Hisense Group provides a distribution

channel of infringing products within this District and the U.S. nationally, where Hisense Visual regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

5.      On information and belief, Qingdao Hisense Electronics Industry Holdings Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place at 218 Qianwangang Road, Qingdao Economic and Technological Development Zone, Qingdao, Shandong Province, 266555, P.R. China. Hisense Electronics Holdings holds at least a 10% interest in and, on information and belief, a controlling interest in Hisense Visual. Hisense Electronics Holdings, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Electronics Holdings operates in agency as part of the Hisense Group. Hisense Electronics Holdings in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

6.      On information and belief, Hisense Import & Export Co. Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Hisense Tower, No. 17 Donghaixi Road, Qingdao, Shandong Province 266071, P.R. China. Hisense Import holds at least a 10% interest in Hisense Int'l and, on information and belief, a controlling interest in Hisense Int'l. Hisense Import, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such

4

as televisions, accused of infringement. Hisense Import operates in agency as part of the Hisense Group. Hisense Import in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally, where Hisense Import regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

7.      On information and belief, Hisense International Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at Hisense Tower, No. 17, Floor 22, Donghaixi Road, South District, Qingdao, Shandong Province 266071, P.R. Hisense Int'l, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Int'l operates in agency as part of the Hisense Group. Hisense Int'l in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally, where Hisense Int'l regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

8.      On information and belief, Hisense International (HK) Co., Ltd. is a corporation organized and existing under the laws of Hong Kong, with a principal place of business located at Room 3101-3105, Singga Commercial Centre, No. 148 Connaught Road West, Sheung Wan, Hong Kong. Hisense Int'l (HK), individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the

United States, including within this District, products, such as televisions, accused of infringement. Hisense Int'l (HK) operates in agency as part of the Hisense Group. Hisense Int'l (HK) in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally, where Hisense Int'l (HK) regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

9.      On information and belief, Hisense International (Hong Kong) America Investment Co., Ltd. is a corporation organized and existing under the laws of Hong Kong, with a principal place of business located at Room 3101-3105, Singga Commercial Centre, No. 148 Connaught Road West, Sheung Wan, Hong Kong. Hisense Int'l (HK) America, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Int'l (HK) America operates in agency as part of the Hisense Group. Hisense Int'l (HK) America in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally, where Hisense Int'l (HK) America regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

10.      On information and belief, Hisense International America Holdings Co., Ltd. is a corporation organized and existing under the laws of Hong Kong, with a principal place of business located at Room 3101-3105, Singga Commercial Centre, No. 148 Connaught Road West, Sheung Wan, Hong Kong. Hisense Int'l America holds at least a 10% interest in and, on information and

belief, a controlling interest in Hisense Int'l (HK) America. Hisense Int'l America, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Int'l America operates in agency as part of the Hisense Group. Hisense Int'l America in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

11.     On information and belief, Guiyang Hisense Electronics Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at No. 39, Honghe Road, Economic Technology Development Zone, Guiyang, Guizhou, 550006 P.R. China. Guiyang Hisense, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Guiyang Hisense operates in agency as part of the Hisense Group. Guiyang Hisense in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

12.     On information and belief, Guiyang Industrial and Commercial Assets Management Co., Ltd. is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at No. 233, Jinyang North Road, Guanshanhu District, Guiyang, Guizhou, 550081 P.R. China. Guiyang Industrial holds at least a 10% interest in and, on information and belief, a controlling interest in Guiyang Hisense. Guiyang Industrial, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or

importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Guiyang Industrial operates in agency as part of the Hisense Group. Guiyang Industrial in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally.

13.     On information and belief, Hisense Electronica Mexico S.A. de C.V. is a corporation organized and existing under the laws of Mexico with a principal place of business at Blvd. Hisense (Sharp) 3510 Parque Industrial Rosarito Playas de Rosarito, B.C. C.P. 22710 Mexico. Hisense Mexico, individually and with Hisense Group, is engaged in making, using, selling, offering for sale, and/or importing, and/or induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions, accused of infringement. Hisense Mexico operates in agency as part of the Hisense Group. Hisense Mexico in agency with the Hisense Group provides a distribution channel of infringing products within this District and the U.S. nationally, where Hisense Mexico regularly imports and inserts into the stream of commerce televisions, such that infringing televisions will be offered for sale and sold in this District and throughout the United States.

14.     On information and belief, Defendants are an interrelated group of companies which collectively comprise one of the largest electronics manufacturers in the United States.

15.     On information and belief, Defendants, individually, together, and/or in concert, participate in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within

the United States after importation, and offers for sale within the United States after importation, of televisions that infringe the Asserted Patents.

16.     The Asserted Patents were invented by employees of Panasonic Corporation ("Panasonic"). Founded in 1918, Panasonic has been at the forefront of the electronics industry for over a century. Panasonic made numerous innovations in the home appliance, battery, mobile phone, and television industries. Indeed, Panasonic's invention of the "Paper Battery" in 1979 is widely credited as enabling the compact electronics of today. In 1991, Panasonic released the Mova P, the smallest and lightest mobile phone on the market, which revolutionized the industry by showing the demand for a compact, lightweight device. Panasonic also produced the first wide-format plasma display and developed the first digital television for the U.S. market. Panasonic's history of innovation is also borne out by its intellectual property. Indeed, a search of the USPTO database where the patent assignee is "Panasonic" yields over 27,000 matches.

17.     Hisense was founded in the People's Republic of China in 1969 and continues as a partially state-owned enterprise of the Chinese government. Hisense's vision is "[t]o become the most trusted company and loved brand in the U.S. Consumer Electronic and Home Appliance industries by offering solutions that customers desire." "Hisense is the fastest growing TV brand in North America by units, among the top 10 TV brands." *See, e.g.*, https://www.hisense-usa.com/company.

18.     Prior to the filing of the Complaint, SPV repeatedly attempted to engage Hisense and/or its agents in licensing discussions related to the Asserted Patents, including but not limited to providing a non-discriminatory offer to license the portfolio on a worldwide basis, including both implementation and any standards-essential patents in the portfolio, that was reasonable for a license taken in the absence of litigation. Hisense ignored these overtures. Hisense's past and

continuing sales of its devices i) willfully infringe the Asserted Patents and ii) impermissibly take the significant benefits of SPV's patented technologies without fair compensation to SPV.

19.     On information and belief, Defendants operate in agency with each other as a group. *See, e.g.*, https://www.hisense-usa.com/company (Hisense "has built 54 overseas companies and utilizes 14 high-end international production facilities in Europe, Central America, and South Africa. Hisense also has 12 research and development centers worldwide with the sole aim of delivering first-rate and affordable products that improve the lives of consumers."). Hisense induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, products, such as televisions and projectors, accused of infringement. Defendants provide a distribution channel of infringing products within this District and the U.S. nationally. Defendants, between and amongst themselves, purposefully direct the Accused Products into established distribution channels within this District and the U.S. nationally.

20.     On information and belief, Defendants maintain a corporate presence in the United States via at least its, U.S.-based sales subsidiaries including, Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation. Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are Georgia corporations with a principal place of business at 7310 McGinnis Ferry Road, Suwanee, Georgia, 20024. Hisense Electronics Manufacturing Company of America Corporation provides sales and distribution support in North America as part of the Hisense Group and for its parents, e.g., Hisense Visual. Hisense Electronics Manufacturing Company of America Corporation is an agent of Defendants. Hisense USA Corporation provides sales and distribution support in North America as part of the Hisense Group and for its parents, e.g., Hisense Visual. Hisense USA Corporation is

an agent of Defendants. At the direction and control of Defendants, U.S.-based sales subsidiaries including, Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, import infringing products, such as televisions and projectors, into the United States and this District.

21.     On information and belief, Hisense and its U.S.-based sales subsidiaries (which act as part of a global network of overseas sales and manufacturing subsidiaries on behalf of Hisense) have operated as agents of one another and vicariously as parts of the same business group to work in concert together and enter into agreements that are nearer than arm's length. For example, Hisense Visual, alone and via at least the activities of its U.S.-based sales subsidiaries (e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation), conducts business in the United States, including importing, distributing, and selling televisions and projectors that incorporate devices, systems, and processes that infringe the Asserted Patents in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

22.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' electronics, such as televisions and projectors, with distributors and customers operating in and maintaining a significant business presence in the U.S. and/or its U.S. subsidiaries, Hisense Electronics Manufacturing Company of America Corporation and

Hisense USA Corporation, Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

23.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). Each Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

26.     This Court has general and specific personal jurisdiction over Defendants pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling accused products in Texas, and/or importing accused products into Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and are continuing to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendants have substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods

offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

27.     This Court has personal jurisdiction over Defendants, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation. Through direction and control of such subsidiaries, Defendants have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are wholly-owned subsidiaries of Hisense. The primary business of Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation is the marketing and sale of electronic products in the United States. Hisense has a 100% controlling ownership interest in Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation and maintains more than half of the voting rights for such subsidiaries as its basis for control. See, e.g., https://www.hisense-usa.com/company ("Hisense USA is the U.S. headquarters that was established by our parent company – Hisense – in Suwanee, GA."). Upon information and belief, Hisense compensates Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation for its sales support services in the United States. As such, Hisense has a direct financial interest in its U.S.-based subsidiaries, and vice versa.

28.     Personal jurisdiction is proper because Defendants have committed acts of infringement in this District. This Court has personal jurisdiction over Defendants because, *inter alia*, this action arises from activities Defendants purposefully directed towards the State of Texas and this District.

29.     Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to SPV.

30.     In addition, Defendants have knowingly induced and continue to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling devices pre-loaded with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

31.     Personal jurisdiction also exists specifically over each of the Defendants because each, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, retail stores including Best Buy and Walmart) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

32.     Personal jurisdiction also exists specifically over each of the Defendants because Defendants have overlapping executives, interlocking corporate structures, and close relationships as manufacturer, importer, and distributor of the products accused of infringement.

33.     To the extent any foreign Defendant is not subject to jurisdiction in any state's court of general jurisdiction, exercising jurisdiction over such Defendant in this State and this District

would be consistent with due process and this State's long-arm statute and under national contacts in light of facts alleged in this Complaint.

34.     In addition, each of the Defendants, directly or through affiliates, subsidiaries, agents, or intermediaries, places infringing products into the stream of commerce knowing they will be sold and used in Texas, and economically benefits from the retail sale of infringing products in this State. For example, Defendants' products have been sold and are available for sale in this District at Best Buy and Walmart retail stores, and are also available for sale and offered for sale in this District through online retailers such as Best Buy, Walmart, and Amazon. Hisense also advertises its infringing products and provides customer support of its infringing products to consumers in Texas and this District through its agent's websites. *See, e.g.*, https://www.hisense-usa.com/tv-and-audio/televisions/all-tvs; https://www.sharptvusa.com/support/.

35.     On information and belief, from 2015 to 2019, Hisense entered into a brand licensing agreement with Sharp Electronics Corporation and/or Sharp Corporation through which Hisense made, used, offered to sell, sold, and/or imported Sharp-branded televisions and projectors in this District and throughout United States. *See, e.g.*, https://www.lifewire.com/hisense-now-has-sharp-assets-1847076.

36.   With respect to the '038 patent, the Accused Products comprise televisions, projectors, and displays that are preloaded with one or more streaming applications that utilizes a TCP protocol and automatically adjusts resolution rates during playback, such as Netflix. On information and belief, the Accused Products include smart TVs. Examples of such devices include, but are not limited to, Hisense and Sharp branded projectors and televisions (e.g., LC-43N7000U, LC-50N7000U, LC-55N7000U, LC-60N7000U, LC-65N7000U, LC-70N7100U, LC-75N8000U, LC-65N9000U, LC-40P5000U, LC-43P5000U, LC-50P5000U, LC-55P5000U, LC-

55P6000U, LC-65P6000U, LC-65P6030U, LC-55P6050U, LC-60P6070U, LC-43P7000U, LC-50P7000U, LC-55P7000U, LC-65P7000U, LC-55P8000U, LC-65P8000U, LC-50Q620U, LC-55Q620U, LC-58Q620U, LC-65Q620U, LC-43Q7000U, LC-50Q7000U, LC-55Q7000U, LC-65Q7000U, LC-55Q7030U, LC-55Q7040U, LC-43Q7080U, LC-65Q7300U, LC-58Q7330U, LC-65Q7330U, LC-58Q7370U, LC-60Q7370U, LC-65Q7370U, LC-60Q7380U, LC-55Q7530U, LC-75Q7570U, LC-55Q8000U, LC-65Q8000U, LC-32LB481U, LC-43LB481U, LC-50LB481U, LC-55LB481U, LC-32LB591U, LC-32LB591C, LC-43LB601C, LC-50LB601C, LC-24LB601U, LC-32LB601U, LC-40LB601U, LC-43LB601U, LC-50LB601U, LC-43LBU711C, LC-50LBU711C, LC-75LBU711C, LC-50LBU711U, LC-55LBU711U, LC-32N4000U, LC-43N4000U, LC-50N4000U, LC-55N4000U, LC-40N5000U, LC-65N5200U, LC-55N5300U, LC-50N6000U, LC-55N6000U, LC-43N6100U, LC-60N6200U, LC-75N620CU, LC-N55N620CU, LC-55P620U, LC-65P620U, LC-65P630U, LC-40Q5000U, LC-43Q5000U, LC-50Q5000U, LC-40Q5020U, LC-32Q5280U, 65A60GMV, 50A60GMV, 43A60GMV, 75A6G, 60A6G, 50A6G, 70A6G, 65A6G, 55A6G, 43A6G, 32H4F, 40H4, 43H4F, 32H4F5, 43H4030F, 40H4030F, 32H4030F, 40H4030F1, 43H4030F1, 32H4030F3, 43H4080F, 40H5500F, 32H5500F, 43H5500G, 32H5500G, 32H5510G, 43H5510G, 32H5580F, 40H5580F, 43H5580G, 40H5590F, 32H5590F, 43H6510G, 50H6510G, 55H6510G, 65H6510G, 75H6510G, 85H6510G, 58H6550E, 65H6570F, 55H6570F, 50H6570F, 43H6570F, 85H6570G, 75H6570G, 70H6570G, 65H6570G, 55H6570G, 50H6570G, 43H6570G, 65H6590F, 55H6590F, 50H6590F, 43H6590F, 55H8E, 65H8E, 65H8F, 55H8F, 50H8F, 75H8G, 65H8G, 55H8G, 50H8G, 65H9F, 55H9F, 65H9G, 55H9G, 120L10E, 100L10E, 100L10E1, 120L10E1, 100L5F, 120L5FBDL, 100L8D, 88L8E, 55R6040F, 55R6040G, 50R6040G, 55R6070E3, 50R6080G, 55R6080G, 65R6080G, 65R6090G, 55R6090G, 50R6090G, 43R6090G, 55R6090G5, 50R6090G5, 43R6090G5, 65R6095G5,

16

55R6095G5, 70R6270F, 70R6290F, 65R6E, 60R6E, 55R6E, 50R6E, 43R6E, 75R6E1, 65R6E1, 50R6E1, 43R6E1, 75R6E3, 65R6E3, 58R6E3, 50R6E3, 43R6E3, 65R6E4, 55R6G, 75R7070E2, 65R7E, 55R7E, 50R7E, 43R7E, 65R7F, 55R7F, 50R7F, 55R8F, 65R8F5, 55R8F5, 65R8F5, 75U6G, 55U6G, 50U6G, 65U6G, 55U7G, 75U7G, 65U7G, 55U8G, 65U8G, 75U9DG, 43H6E, 49H6E, 50H6E, 55H6E, 65H6E, 60H6080E, 65R7050E1, 55H8050D, 65H805D, 50H8C, 55H8C, 55H9D, 65H9D, 55H9E, 65H9E, 65H9EPLUS, 55H9EPLUS, 55R6000E), as well as, their components, and processes related to the same. With respect to the '871 patent, '441 patent, and '144 patent, the Accused Products comprise televisions, projectors, and displays that support Wi-Fi Direct. On information and belief, the Accused Products include functionality for mirroring the screen of a wireless device that supports Wi-Fi Direct or playing/streaming media from a wireless device that supports Wi-Fi Direct, where Hisense markets the Wi-Fi Direct functionality in the Accused Products as several different names (e.g., Miracast, Anyview stream, Anyview cast, mirror functionality in Roku devices, mirror, MultiMediaPlayer streaming functionality from wireless device, Media streaming functionality from wireless device, Wireless Display, Smart View, Wireless Projection, etc.). Examples of such devices include, but are not limited to, Hisense and Sharp branded projectors and televisions (e.g., LC-32LB481U, LC-43LB481U, LC-50LB481U, LC-55LB481U, LC-32LB591U, LC-32LB591C, LC-43LB601C, LC-50LB601C, LC-24LB601U, LC-32LB601U, LC-40LB601U, LC-43LB601U, LC-50LB601U, LC-43LBU591U, LC-43LBU591C, LC-50LBU591U, LC-50LBU591C, LC-55LBU591U, LC-55LBU591C, LC-65LBU591U, LC-65LBU591C, LC-43LBU711C, LC-50LBU711C, LC-75LBU711C, LC-50LBU711U, LC-55LBU711U, LC-32N4000U, LC-43N4000U, LC-50N4000U, LC-55N4000U, LC-40P5000U, LC-43P5000U, LC-50P5000U, LC-55P5000U, LC-55P6000U, LC-65P6000U, LC-65P6030U, LC-55P6050U, LC-60P6070U, LC-55P620U, LC-

65P620U, LC-65P630U, LC-43P7000U, LC-50P7000U, LC-55P7000U, LC-65P7000U, LC-55P8000U, LC-65P8000U, LC-50Q620U, LC-55Q620U, LC-58Q620U, LC-65Q620U, LC-43Q7000U, LC-50Q7000U, LC-55Q7000U, LC-65Q7000U, LC-55Q7030U, LC-55Q7040U, LC-43Q7080U, LC-65Q7300U, LC-58Q7330U, LC-65Q7330U, LC-58Q7370U, LC-60Q7370U, LC-65Q7370U, LC-60Q7380U, LC-55Q8000U, LC-65Q8000U, 65A60GMV, 50A60GMV, 43A60GMV, 75A6G, 60A6G, 50A6G, 70A6G, 65A6G, 55A6G, 43A6G, 32H4F, 40H4, 43H4F, 32H4F5, 43H4030F, 40H4030F, 32H4030F, 40H4030F1, 43H4030F1, 32H4030F3, 43H4080F, 40H5500F, 32H5500F, 43H5500G, 32H5500G, 32H5510G, 43H5510G, 32H5580F, 40H5580F, 43H5580G, 40H5590F, 32H5590F, 43H6510G, 50H6510G, 55H6510G, 65H6510G, 75H6510G, 85H6510G, 58H6550E, 65H6570F, 55H6570F, 50H6570F, 43H6570F, 85H6570G, 75H6570G, 70H6570G, 65H6570G, 55H6570G, 50H6570G, 43H6570G, 65H6590F, 55H6590F, 50H6590F, 43H6590F, 55H8E, 65H8E, 65H8F, 55H8F, 50H8F, 75H8G, 65H8G, 55H8G, 50H8G, 65H9F, 55H9F, 65H9G, 55H9G, 120L10E, 100L10E, 100L10E1, 120L10E1, 100L5F, 120L5FBDL, 100L8D, 88L8E, 55R6040F, 55R6040G, 50R6040G, 55R6070E3, 50R6080G, 55R6080G, 65R6080G, 65R6090G, 55R6090G, 50R6090G, 43R6090G, 55R6090G5, 50R6090G5, 43R6090G5, 65R6095G5, 55R6095G5, 70R6270F, 70R6290F, 65R6E, 60R6E, 55R6E, 50R6E, 43R6E, 75R6E1, 65R6E1, 50R6E1, 43R6E1, 75R6E3, 65R6E3, 58R6E3, 50R6E3, 43R6E3, 65R6E4, 55R6G, 75R7070E2, 65R7E, 55R7E, 50R7E, 43R7E, 65R7F, 55R7F, 50R7F, 55R8F, 65R8F5, 55R8F5, 65R8F5, 75U6G, 55U6G, 50U6G, 65U6G, 55U7G, 75U7G, 65U7G, 55U8G, 65U8G, 75U9DG, 43H6E, 49H6E, 50H6E, 55H6E, 65H6E, 60H6080E, 65R7050E1, 55H8050D, 65H805D, 50H8C, 55H8C, 55H9D, 65H9D, 55H9E, 65H9E, 65H9EPLUS, 55H9EPLUS, 55R6000E, 75U1600, 55U1600, 65U1600), as well as, their components, and processes related to the same.

37.  On information and belief, Hisense controls or otherwise directs and authorizes all activities of its U.S.-based sales subsidiaries, including Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation. Such directed and authorized activities include, the U.S. Subsidiaries' using, offering for sale, selling, and/or importing the Accused Products, their components, and/or products containing the same that incorporate the fundamental technologies covered by the Asserted Patents. The Defendants' U.S.-based sales subsidiaries (e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation) are authorized to import, distribute, sell, or offer for sale the Accused Products on behalf of Defendants. For example, Hisense researches, designs, develops, and manufactures televisions and then directs its U.S.-based sales subsidiaries to import, distribute, offer for sale, and sell the Accused Products in the United States. *See, e.g., United States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015) (finding that the sale of infringing products to third parties rather than for direct import into the U.S. did not "place [defendants'] conduct beyond the reach of United States law [or] escape culpability under the rubric of extraterritoriality"). Furthermore, Defendants' U.S.-based sales subsidiaries also administer, on behalf of Defendants, requests for service under and any disputes arising from Defendants' limited warranty of the Accused Products sold in the U.S., including in Texas and this judicial district. *See, e.g.*, https://www.hisense-usa.com/television-1-year-warranty.  Thus, Defendants' U.S.-based sales subsidiaries conduct infringing activities on behalf of Defendants.

38.  On information and belief, Defendants' U.S.-based sales subsidiaries corporate presence in the United States gives Hisense substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state. Defendants' U.S.-based sales subsidiaries are authorized to import, distribute, sell, and offer for

19

sale Defendants' products, including televisions incorporating infringing devices and processes, on behalf of Defendants. For example, Defendants' U.S.-based sales subsidiaries operate within Defendants' global network of sales subsidiaries in North and South America, Europe, Asia, Australia, and the Middle East. In the U.S., including within the Eastern District of Texas, Defendants' projectors and televisions, which comprise infringing devices and processes, are imported, distributed, offered for sale, and sold.

39.   Via Defendants' alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers maintaining a business presence, operating in, and/or residing in the U.S., Defendants' products, including products and processes accused of infringing the Asserted Patents, are or have been widely distributed and sold in retail stores, both brick and mortar and online, in Texas including within this judicial district. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corp.*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)). For example, Defendants' televisions are sold to end users by the U.S.-based subsidiaries, distributors, and customers, including, but not limited to, Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, online and at retail stores located throughout the Eastern District of Texas.

40.   On information and belief, Hisense has placed and continues to place infringing products and/or products that practice infringing processes into the stream of commerce via established distribution channels comprising at least subsidiaries and distributors, such as Hisense

Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, and customers such as Walmart, Best Buy, and Amazon, with the knowledge and/or intent that those products are and/or will be imported, used, offered for sale, sold, and continue to be sold in the United States and Texas, including in this judicial district. As a result, Hisense has, vicariously through and/or in concert with its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers, placed the Accused Products into the stream of commerce via established distribution channels with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this judicial district.

41.     In the alternative, the Court has personal jurisdiction over Defendants under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Defendants are not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Defendants is consistent with the U.S. Constitution.

42.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule.).

## THE ASSERTED PATENTS AND TECHNOLOGY

43.     On information and belief, a significant portion of the revenue of Hisense is derived from the manufacture and sale of televisions. Defendants' Accused Products are utilized in wireless networks.

44.     The Accused Products support Wi-Fi Direct. For example, the 50H6E television is certified with the Wi-Fi Alliance, sold in the United States, and supports Wi-Fi Direct.

45.     Using Wi-Fi Direct connectivity, the 50H6E can be configured as a P2P Group Owner and a Wi-Fi Direct peer, such that one Wi-Fi Direct peer acts as a "communication terminal" and another Wi-Fi Direct peer (e.g., the 50H6E) acts as "base station," as indicated below:



*See Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7*, WI-FI ALLIANCE, *available via* https://www.wi-fi.org/, pp. 14-17.

46.     The Wi-Fi Direct peer acting as a P2P Group Owner (e.g., 50H6E) has wireless communication circuitry (e.g., a Wi-Fi module) that communicates with another Wi-Fi Direct peer (e.g., wireless communication device that supports Wi-Fi Direct).



Wi-Fi Peer-to-Peer (P2P) Technical Specification Version 1.7 [Page 168]

47.     The Wi-Fi Direct peer acting as a base station (e.g., 50H6E) has control circuitry (e.g., a Wi-Fi module processor) that controls the wireless communication circuitry.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 6,877,038)

48.     Plaintiff incorporates paragraphs 1 through 47 herein by reference.

49.     SPV is the assignee of the '038 patent, entitled "Data Transmission Method and Apparatus" with ownership of all substantial rights in the '038 patent, including the right to exclude others and to enforce, sue, and recover damages for past infringements.

50.     The '038 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '038 patent issued from U.S. Patent Application No. 10/633,574.

51.     Hisense has directly and/or indirectly infringed (by inducing infringement) one or more claims of the '038 patent in this judicial district and elsewhere in Texas and the United States.

23

52.     On information and belief, Hisense designs, develops, manufactures, assembles and markets televisions, projectors, and other devices that are preloaded with one or more streaming applications that utilizes a TCP protocol and automatically adjusts resolution rates during playback, such as Netflix. For example, the Accused Products are preloaded with Netflix.

53.     Hisense directly infringed the '038 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '038 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Hisense sold and made the Accused Products outside of the United States, delivered those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivered the Accused Products outside of the United States it did so intending and/or knowing that those products were destined for the United States and/or designed those products for sale in the United States, thereby directly infringing the '038 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Hisense directly infringed the '038 patent through its direct involvement in the activities of its subsidiaries, including Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conducted activities that constitute direct infringement of the '038 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Hisense offered for sale, sold, and imported the Accused Products within the U.S. to, for example, its distributors, customers,

24

subsidiaries, importers, and/or consumers. Further, Hisense is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Hisense and Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are essentially the same company, and Hisense has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation.

54.     For example, Hisense infringed claim 1 of the '038 patent via the Accused Products. For example, the Accused Products include TVs that are preloaded with the Netflix application. The Accused Products perform a method for receiving data packets from a transmitter. For example, on information and belief, the Accused Products receive data packets (e.g., streaming content) from a transmitter (e.g., Netflix servers).

55.     The Accused Products are programmed to decide that a data packet is missing. For example, on information and belief, the Accused Products are configured to use HTTP Live Streaming (HLS) when streaming content. HLS utilizes the TCP protocol, which is designed to do error checking, meaning that it can detect missing data packets. Further, the Accused Products are programmed to recognize TCP errors, which, in some instances, correspond to missing data packets.

56.     The Accused Products make a retransmission decision, based on channel conditions, importance of the missing data packet and bit rates of previously received data packets, as to whether a retransmission request for the missing data packet is to be sent. For example, on

information and belief, when running Netflix, the Accused Products utilize a "Quality of Experience" or "QoE" metric in making viewing decisions, including retransmission decisions. The QoE metric is a function of the factors affecting quality of experience. Among other things, the QoE metric considers re-buffering count, bit rate, and startup time. The QoE metric informs the Accused Products' retransmission decision.

57.     The Accused Products send the retransmission request to the transmitter if the retransmission decision is affirmative. For example, on information and belief, the Accused Products send a retransmission request to the Netflix servers if it detects a packet loss corresponding to its buffer and the QoE does not necessitate downgrading the content resolution.

58.     The Accused Products receive a packet retransmitted by the transmitter in response to the retransmission request. For example, on information and belief, the Accused Products utilize a TCP protocol. In response to a retransmission request, the Accused Products receive a packet (e.g., video content) retransmitted by the transmitter (e.g., Netflix servers).

59.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

60.     At a minimum, Hisense has known of the '038 patent at least as early as November 24, 2020, when Hisense was given access to a data room providing notice of its infringement. Further, Hisense was notified again, on December 10, 2020 and May 12, 2021, that it had access to the data room providing notice of Hisense's infringement of the '038 patent.

61.     Prior to the filing of the Complaint, Hisense knew or should have known of the '038 patent, and knew or should have known that they infringed the '038 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '038 patent and took deliberately wrongful steps to ignore their infringement of the '038 patent.

62.     On information and belief, since at least the above-mentioned date when Hisense was on notice of its infringement, Hisense has actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '038 patent to directly infringe one or more claims of the '038 patent by using, offering for sale, selling, and/or importing the Accused Products. *See, e.g.*, https://www.hisense-usa.com/tv-and-audio/televisions/all-tvs (inducing consumers to use preloaded applications, such as Netflix, in the Accused Products, where consumers directly infringe the '038 patent); https://assets.hisense-usa.com/assets/ProductDownloads/34/38f649c034/65H9F-SPEC-SHEET-v2.pdf (a 2018 Hisense data sheet stating "Enjoy 500,0000+ movies and shows, plus video streaming from Netflix, Hulu, YouTube and more", which is exemplary and representative of the Accused Products' marketing literature of Hisense actively inducing consumers to infringe the '038 patent by using preloaded applications, such as Netflix, in the Accused Products). Since at least the notice provided on the above-mentioned date, Hisense did so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '038 patent. Hisense intended to cause, and has taken affirmative steps to induce infringement by distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying wireless networking features, such as HLS, in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted

above, this includes, but is not limited to, the collective willful blindness of the Hisense Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '038 patent.

63.     On information and belief, despite having knowledge of the '038 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '038 patent, Hisense has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Hisense's infringing activities relative to the '038 patent have been willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

64.     SPV has been damaged as a result of Hisense's infringing conduct described in this Count. Hisense is, thus, liable to SPV in an amount that adequately compensates SPV for Hisense's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,902,871)

65.      Plaintiff incorporates paragraphs 1 through 64 herein by reference.

66.     SPV is the assignee of the '871 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '871 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

67.     The '871 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '871 patent issued from U.S. Patent Application No. 13/607,931.

68.     Hisense has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '871  patent in this judicial district and elsewhere in Texas and the United States.

69.     On information and belief, Hisense designs, develops, manufactures, assembles and markets projectors and TVs that support Wi-Fi Direct. One such product is the 50H6E television.

70.     Hisense directly infringes the '871  patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '871 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Hisense sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '871 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Hisense directly infringes the '871 patent through its direct involvement in the activities of its subsidiaries, including Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such

subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '871 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Hisense offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Hisense is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Hisense and Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are essentially the same company, and Hisense has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation.

71.     For example, Hisense infringes claim 1 of the '871 patent via the Accused Products. The Accused Products comprise "a wireless base station connected to a wireless communication terminal" of claim 1. For example, in Wi-Fi Direct, each Accused Product is configured to function as a wireless base station connected to a wireless communication terminal (e.g., a second device with Wi-Fi Direct capability).

72.     The Accused Products include a wireless communication section (e.g., a Wi-Fi module) that communicates with the wireless communication terminal in accordance with a predetermined communication method (e.g., the Wi-Fi Direct protocols).

73.     The Accused Products include a control section (e.g., Wi-Fi module processor) that controls the wireless communication section. The control section controls the wireless

communication section to establish a connection with the wireless communication terminal by using (i) a first connection which does not require an authentication procedure for connection with the wireless communication terminal, or (ii) a second connection which requires the authentication procedure for connection with the wireless communication terminal.

74.     A first wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a first wireless communication method (e.g., IEEE 802.11).

75.     The second wireless communication section (e.g., Wi-Fi module) of the Accused Products is configured to communicate with the wireless communication terminal in accordance with a second wireless communication method (e.g., P2P protocol described in the "Wi-Fi Peer-to-Peer (P2P) Technical Specification").

76.     Prior to the first wireless communication section starting communication with the wireless communication terminal, the control section in the Accused Products controls the second wireless communication section, and transmits, to the wireless communication terminal, profile information that is necessary for the first wireless communication section to communicate with the wireless communication terminal. For example, the Accused Products transmit to another Wi-Fi Direct peer device, via the second method (e.g., P2P protocol), profile information (e.g., operating channel attributes) necessary for the devices to communicate via the first method (e.g., IEEE 802.11).

77.     The technology discussion above and the exemplary Accused Products provide context for Plaintiff's infringement allegations.

78.     At a minimum, Hisense has known of the '871 patent at least as early as the filing date of the Complaint. In addition, Hisense has known about the '871 patent since at least

November 24, 2020, when Hisense was given access to a data room providing notice of its infringement. Further, Hisense was notified again, on December 10, 2020 and May 12, 2021, that it had access to the data room providing notice of Hisense's infringement of the '871 patent.

79.     Prior to the filing of the Complaint, Hisense knew or should have known of the '871 patent, and knew or should have known that they infringed the '871 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '871 patent and took deliberately wrongful steps to ignore their infringement of the '871 patent

80.     On information and belief, since at least the above-mentioned date when Hisense was on notice of its infringement, Hisense has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '871 patent to directly infringe one or more claims of the '871 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Hisense does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '871 patent. Hisense intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this

includes, but is not limited to, the collective willful blindness of the Hisense Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '871 patent.

81.     On information and belief, despite having knowledge of the '871 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '871 patent, Hisense has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Hisense's infringing activities relative to the '871 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

82.     SPV has been damaged as a result of Hisense's infringing conduct described in this Count. Hisense is, thus, liable to SPV in an amount that adequately compensates SPV for Hisense's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III**
(INFRINGEMENT OF U.S. PATENT NO. 9,357,441)

83.     Plaintiff incorporates paragraphs 1 through 82 herein by reference.

84.     SPV is the assignee of the '441 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System," with ownership of all substantial rights in the '441 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

85.     The '441 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '441 patent issued from U.S. Patent Application No. 14/747,164.

86.     Hisense has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '441 patent in this judicial district and elsewhere in Texas and the United States.

87.     On information and belief, Hisense designs, develops, manufactures, assembles and markets projectors and TVs that support Wi-Fi Direct. One such product is the 50H6E Hisense branded television.

88.     Hisense directly infringes the '441 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '441 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Hisense sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '441 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Hisense directly infringes the '441 patent through its direct involvement in the activities of its subsidiaries, including Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, including by selling and offering for sale the Accused Products directly

to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '441 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Hisense offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Hisense is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Hisense and Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are essentially the same company, and Hisense has the right and ability to control its subsidiaries infringing acts and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation.

89.     For example, Hisense infringes claim 14 of the '441 patent via the Accused Products. The Accused Products comprise the "wireless base station" of claim 14. Each of the Accused Products supports communication using the Wi-Fi Direct protocol and can perform the role of the P2P Group Owner (the wireless base station).

90.     The Accused Products comprise wireless communication circuitry operative to communicate with a wireless communication terminal. The wireless communication circuitry is the circuitry responsible for supporting and/or implementing the Wi-Fi Direct protocols. The wireless communication circuitry is configured to communicate with a wireless communication terminal by using (i) a non-authentication connection which does not require an authentication

procedure for connection with the wireless communication term, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless communication terminal.

91.    The Accused Products comprise control circuitry (e.g., the Wi-Fi module) operative to transmit, by using the wireless communication circuitry, communication channel information (e.g., channel list and operating channel attributes) to the wireless communication terminal with a first communication method (e.g., P2P protocol), prior to the authentication connection starting with a second communication method (e.g., IEEE 802.11), the communication channel information being necessary for the second communication method to select a communication channel for communicating with the wireless terminal.

92.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's allegations that each limitation of claim 14 is met.

93.    At a minimum, Hisense has known of the '441 patent at least as early as the filing date of the Complaint. In addition, Hisense has known about the '441 patent since at least November 24, 2020, when Hisense was given access to a data room providing notice of its infringement. Further, Hisense was notified again, on December 10, 2020 and May 12, 2021, that it had access to the data room providing notice of Hisense's infringement of the '441 patent.

94.    Prior to the filing of the Complaint, Hisense knew or should have known of the '441 patent, and knew or should have known that they infringed the '441 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '441 patent and took deliberately wrongful steps to ignore their infringement of the '441 patent.

95.    On information and belief, since at least the above-mentioned date when Hisense was on notice of its infringement, Hisense has actively induced, under U.S.C. § 271(b), its

distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '441 patent to directly infringe one or more claims of the '441 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-mentioned date, Hisense does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '441 patent. Hisense intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Hisense Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '441 patent.

96.     On information and belief, despite having knowledge of the '441 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '441 patent, Hisense has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Hisense's infringing activities relative to the '441 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical

infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

97.     SPV has been damaged as a result of Hisense's infringing conduct described in this Count. Hisense is, thus, liable to SPV in an amount that adequately compensates SPV for Hisense's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV
### (INFRINGEMENT OF U.S. PATENT NO. 10,039,144)

98.     Plaintiff incorporates paragraphs 1 through 97 herein by reference.

99.     SPV is the assignee of the '144 patent, entitled "Wireless Base Station and Wireless Communication Terminal and Wireless Communication System" with ownership of all substantial rights in the '144 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

100.     The '144 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '144 patent issued from U.S. Patent Application No. 15/142,258.

101.     Hisense has and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '144 patent in this judicial district and elsewhere in Texas and the United States.

102.     On information and belief, Hisense designs, develops, manufactures, assembles and markets projectors and TVs that support Wi-Fi Direct. One such product is the 50H6E Hisense branded television.

103.     Hisense directly infringes the '144 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products, their components and

processes, and/or products containing the same that incorporate the fundamental technologies covered by the '144 patent to, for example, its alter egos, agents, intermediaries, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, on information and belief, Hisense sells and makes the Accused Products outside of the United States, delivers those products to its customers, distributors, and/or subsidiaries in the United States, or in the case that it delivers the Accused Products outside of the United States it does so intending and/or knowing that those products are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '144 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Hisense directly infringes the '144 patent through its direct involvement in the activities of its subsidiaries, including Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, including by selling and offering for sale the Accused Products directly to such subsidiaries and importing the Accused Products into the United States for such subsidiaries. Such subsidiaries conduct activities that constitute direct infringement of the '144 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Products. For example, and on information and belief, Hisense offers for sale, sells, and imports the Accused Products within the U.S. to, for example, its distributors, customers, subsidiaries, importers, and/or consumers. Further, Hisense is vicariously liable for this infringing conduct of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation, (under both the alter ego and agency theories) because, as an example and on information and belief, Hisense and Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation are essentially the same company, and Hisense has the right and ability to control its subsidiaries infringing acts

and receives a direct financial benefit from the infringement of its U.S.-based sales subsidiaries, e.g., Hisense Electronics Manufacturing Company of America Corporation and Hisense USA Corporation.

104.    For example, TCL infringes claim 7 of the '144 patent via the Accused Products. The Accused Products comprise the "wireless station" of claim 7. For example, the Accused Products support communication using the Wi-Fi Direct protocol. Each of the Accused Products supports communication using the Wi-Fi Direct protocol and can perform the role of the P2P Group Owner (the wireless station).

105.    The Accused Products comprise wireless communication circuitry operative to communicate with a wireless communication terminal. The wireless communication circuitry is the circuitry responsible for supporting and/or implementing the Wi-Fi Direct protocols. The wireless communication circuitry is configured to communicate with a wireless communication terminal by using (i) a non-authentication connection which does not require an authentication procedure for connection with the wireless communication device, or (ii) an authentication connection which requires the authentication procedure for connection with the wireless connection device.

106.    The Accused Products comprise control circuitry (e.g., Wi-Fi module) operative to transmit, by using the wireless communication circuitry, profile information (e.g., channel list and operating channel attributes) to the wireless communication device with a first communication method (e.g., P2P protocol) prior to the authentication connection starting with a second communication method (e.g., IEEE 802.11), the profile information being necessary for the second communication method to communicate with the wireless communication device.

107.    The control circuitry of the Accused Products is operative to control the wireless communication circuitry to transmit a content (e.g., WSC Exchange data, such as a Device Password) with the second communication method (e.g., IEEE 802.11).

108.    The control circuitry of the Accused Products further controls the wireless communication circuitry to transmit information (e.g., WSC IE data, such as a Device Password ID) that is related to the content with the first communication method (e.g., P2P protocol).

109.    The technology discussion above and the exemplary Accused Products provide context for Plaintiff's allegations that each limitation of claim 7 is met.

110.    At a minimum, Hisense has known of the '144 patent at least as early as the filing date of the Complaint. In addition, Hisense has known about the '144 patent since at least November 24, 2020, when Hisense was given access to a data room providing notice of its infringement. Further, Hisense was notified again, on December 10, 2020 and May 12, 2021, that it had access to the data room providing notice of Hisense's infringement of the '144 patent.

111.    Prior to the filing of the Complaint, Hisense knew or should have known of the '144 patent, and knew or should have known that they infringed the '144 patent's claims. Indeed, at a minimum, they exercised willful blindness to the existence of the '144 patent and took deliberately wrongful steps to ignore their infringement of the '144 patent.

112.    On information and belief, since at least the above-mentioned date when Hisense was on notice of its infringement, Hisense has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the Accused Products that include or are made using all of the limitations of one or more claims of the '144 patent to directly infringe one or more claims of the '144 patent by using, offering for sale, selling, and/or importing the Accused Products. Since at least the notice provided on the above-

mentioned date, Hisense does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '144 patent. Hisense intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing and certifying features related to Wi-Fi Direct in the Accused Products, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. As noted above, this includes, but is not limited to, the collective willful blindness of the Hisense Group, including their singular and collective refusal to investigate whether the Accused Products infringe the '144 patent.

113.    On information and belief, despite having knowledge of the '144 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '144 patent, Hisense has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Hisense's infringing activities relative to the '144 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

114.    SPV has been damaged as a result of Hisense's infringing conduct described in this Count. Hisense is, thus, liable to SPV in an amount that adequately compensates SPV for Hisense's

infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

115.    Plaintiff SPV is entitled to recover from Hisense the damages sustained by Plaintiff as a result of Hisense's wrongful acts, and willful infringement (including its willful blindness of infringement), in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

116.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

117.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

118.    Plaintiff respectfully requests that the Court find in its favor and against Hisense, and that the Court grant Plaintiff the following relief:

1.  A judgment that Hisense has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.  A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Hisense;

3.  A judgment and order requiring Hisense to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

4.  A judgment and order requiring Hisense to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

5.  A judgment and order finding this to be an exceptional case and requiring Hisense to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

6.  Such other and further relief as the Court deems just and equitable.

Dated: June 10, 2021                                   Respectfully submitted,


                                                       /s/ *Patrick J. Conroy*
                                                       Patrick J. Conroy
                                                       Texas Bar No. 24012448
                                                       Justin Kimble
                                                       Texas Bar No. 24036909
                                                       T. William Kennedy Jr.
                                                       Texas Bar No. 24055771
                                                       Jon Rastegar
                                                       Texas Bar No. 24064043
                                                       Ryan Griffin
                                                       Texas Bar No. 24053687
                                                       **Nelson Bumgardner Albritton PC**
                                                       3131 W 7th St
                                                       Suite #300
                                                       Fort Worth, TX 76107
                                                       Tel: (817) 377-9111
                                                       pat@nbafirm.com
                                                       justin@nbafirm.com
                                                       bill@nbafirm.com
                                                       jon@nbafirm.com
                                                       ryan@nbafirm.com

                                                       **Attorneys for Plaintiff**
                                                       **Sovereign Peak Ventures, LLC**